UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERGE ALAIN HYACINTHE KOUDOU,<br><br>                    Plaintiff,<br><br>                    -v-<br><br>THE PERMANENT MISSION OF CÔTE D'IVOIRE TO THE UNITED NATIONS IN NEW YORK,<br><br>                    Defendant. | 25-CV-7548 (JPO)<br><br>MEMORANDUM AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Serge Alain Hyacinthe Koudou brings this action against the Permanent Mission of Côte d'Ivoire to the United Nations in New York (the "Mission"), asserting claims for compensation arising out of Koudou's employment by the Ivorian government. The Mission moves to dismiss the Complaint for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611. For the reasons that follow, the Mission's motion to dismiss for lack of subject matter jurisdiction is granted.

I.      Background

The following facts are taken from Koudou's Complaint and are presumed true for purposes of resolving the instant motion. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

Koudou is a citizen of Côte d'Ivoire who currently resides in the United States. (ECF No. 1 ("Compl.") ¶ 6.) At all relevant times, Koudou was a member of the Army of Côte d'Ivoire, first as a gendarme and later as a sergeant. (*Id.* ¶ 8.) In 2008, Koudou was assigned to the position of security officer at the Permanent Mission of Côte d'Ivoire to the United Nations, located in New York. (*Id.* ¶ 9.)

1

Koudou had an agreement with the Government of Côte d'Ivoire for a monthly salary of $2,700. (*Id.* ¶ 10.) Koudou was also to receive separate reimbursements for rent, utilities, and medical insurance. (*Id.*) Koudou paid these expenses out of pocket and then submitted an invoice to the Government of Côte d'Ivoire for reimbursement each year. (*Id.* ¶ 11.)

For reasons not disclosed in Koudou's Complaint, in 2011 the Ambassador of the Mission instructed Koudou to stop reporting to work and to stay home. (*Id.* ¶ 14.) From 2011 to 2019, the Mission only partially reimbursed Koudou's household expenses. (*Id.* ¶ 15.) These reimbursements were handled by the Mission's military advisors—Colonel Affanou, Colonel Ouattara Karim, and General Adjoumani—allegedly acting on the Mission's behalf. (*Id.*)

On September 18, 2019, General Adjoumani met with Koudou and other military personnel, during which General Adjoumani, on behalf of Côte d'Ivoire, and Koudou entered into an agreement. (*Id.* ¶ 16.) Per the agreement, Koudou allegedly was promised reimbursement of his outstanding out-of-pocket expenses and future household expenses and payment of his salary despite his not returning to work. (*Id.*) In exchange, Koudou agreed to refrain from filing a lawsuit against the Mission. (*Id.*)

However, from the end of 2019 until present, the Mission did not pay the invoices as it had promised. (*Id.* ¶ 19.) Moreover, the Mission stopped paying Koudou his salary in November 2021. (*Id.* ¶ 21.) Accordingly, as of September 2025, Koudou alleges that he is owed $129,500 for his past wages and compensation and $707,149.90 for his out-of-pocket expenses. (*Id.* ¶¶ 24-25.)

On September 10, 2025, Koudou filed this suit asserting causes of action against the Mission for breach of contract, account stated, quantum meruit, and promissory estoppel. (*See generally* Compl.) On December 19, 2025, the Mission filed its motion to dismiss (ECF No. 10)

2

and accompanying memorandum of law (ECF No. 12).  On December 29, Koudou filed his opposition to the motion (ECF No. 14 ("Opp.")), and the Mission filed a reply in further support on January 9, 2026 (ECF No. 18).

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides in relevant part that a party may assert lack of subject matter jurisdiction as a defense by motion.  "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Allen v. Mattingly*, 478 F. App'x 712, 713 (2d Cir. 2012) (summary order) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

In deciding a motion to dismiss for lack of subject matter jurisdiction, courts "must accept as true all material factual allegations in the complaint, but . . . may not draw any jurisdictional inferences in favor of the plaintiff."  *Blecher v. Holy See*, 146 F.4th 206, 216 (2d Cir. 2025) (quotation marks omitted).  "In addressing a claim of sovereign immunity, a court will start by considering the allegations of the complaint, but it may, in appropriate circumstances, consider matters outside the complaint as well."  *Nam v. Permanent Mission of Republic of Korea to United Nations*, 118 F.4th 234, 244 (2d Cir. 2024).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025) (quotation marks omitted).

## III.    Discussion

The facts of this case strongly resemble a case before Judge Schofield, *Gnobo Gnopo v. The Permanent Mission of Cote D'Ivoire to the United Nations in New York*, No. 24-CV-7262,

3

2026 WL 483158 (S.D.N.Y. Feb. 20, 2026).  Consequently, this opinion relies heavily on her well-reasoned analysis.

Under the FSIA, a foreign state is presumptively immune from the jurisdiction of United States courts unless a statutory exception applies.  *See* 28 U.S.C. § 1604.  "A defendant seeking sovereign immunity bears the burden of establishing a prima facie case that it is a foreign sovereign."  *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 559-60 (2d Cir. 2020).  Once met, "the burden shifts to the plaintiff to make an initial showing that an enumerated exception to sovereign immunity[, such as commercial activity,] applies."  *Id*. at 560.  The commercial activity exception to sovereign immunity allows for jurisdiction where a sovereign essentially acts as a private party by engaging in commercial activity.  *See* 28 U.S.C. § 1605(a)(2).  The "commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  *Id*. § 1603(d); *NML Cap., Ltd. v. Republic of Arg.*, 680 F.3d 254, 257 (2d Cir. 2012).

"To determine the nature of a sovereign's act, we ask whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce."  *Id.* at 258 (quotation marks omitted).  "[A] foreign state engages in commercial activity for purposes of the FSIA only where it acts in the manner of a private player within the market."  *Attestor Master Value Fund LP v. Republic of Arg.*, 113 F.4th 220, 231 (2d Cir. 2024), *cert. denied sub nom. Republic of Arg. v. Attestor Master Value Fund LP*, 145 S. Ct. 1141 (2025).

Here, the Mission has satisfied its burden of making a prima facie showing that it is a foreign state.  As in *Gnopo*, the Complaint treats its claims as against Côte d'Ivoire rather than against the Mission.  *See Gnopo*, 2026 WL 483158, at *3.  And "[i]n any event, because the

4

Mission is not a separate legal entity, [Koudou's] claims are construed to be asserted against Côte d'Ivoire." *Id.* (citing *Harvey v. Permanent Mission of Republic of Sierra Leone to United Nations*, 97 F.4th 70, 77 (2d Cir. 2024) ("A foreign state's permanent mission to the United Nations is indisputably the embodiment of that state.")). Moreover, Côte d'Ivoire is a sovereign nation and a member nation of the United Nations. (ECF No. 11 ¶ 9.)

As the Mission has satisfied its burden, the burden now shifts to Koudou to make an initial showing that an enumerated exception to sovereign immunity applies. *Pablo Star*, 961 F.3d at 559-60. The Complaint asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1605(a)(2). (Compl. ¶ 3.) Section 1605(a)(2) provides in relevant part that a foreign state is not immune from the jurisdiction of United States courts in any case in which the action is based upon commercial activity carried on in the United States by a foreign state. 28 U.S.C. § 1605(a)(2). "Whether conduct is commercial turns on the 'nature' of the sovereign's relationship with the plaintiff and the acts giving rise to the claim." *Gnopo*, 2026 WL 483158, at *3 (citing *Nam*, 118 F.4th at 243-44).

Here, Koudou seeks damages stemming from his termination from duty and the resulting loss of wages and other compensation. Those alleged injuries arise from his service as an Ivoirian military officer, not from a private-sector employment relationship. Personnel decisions regarding active-duty military officers constitute quintessential sovereign functions—integrally bound up with national defense and command structure—rather than participation in the marketplace. As Judge Schofield observed in *Gnopo*, "[b]ecause the challenged conduct concerns sovereign management of military personnel, rather than market conduct by a private employer, the commercial activity exception does not apply." *Id.*

5

Koudou counters that, because this case sounds in contract rather than in the termination of his military status, the Court has subject matter jurisdiction.  (Opp. at 10.)  He contends that the agreement to reimburse out-of-pocket and future household expenses and provide compensation is not intertwined with military functions and that the Court must assess only the act of signing the contract—which, in his view, is inherently commercial—rather than the nature of his military employment.  (*Id.*)

That argument is unpersuasive.  The compensation that Koudou seeks—past wages and reimbursement of expenses—cannot be disentangled from his military deployment.  As the Second Circuit has explained, "a state engages in commercial activity under the FSIA where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns."  *Attestor*, 113 F.4th at 230-31 (quotation marks omitted).  A "private player within the market" cannot deploy military personnel or assign security missions.  *Id.* at 231 (quotation marks omitted).  Those are paradigmatic sovereign prerogatives.  The Supreme Court has likewise emphasized that the commercial-activity inquiry turns on whether the conduct is of the type in which private actors engage, as opposed to those powers "peculiar to sovereigns."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993).  Decisions regarding military deployment and compensation incident to such service are governmental in nature, even if memorialized in contractual form.

Nor does labeling the dispute as contractual alter the analysis.  Personnel decisions tied to military service remain sovereign acts for FSIA purposes, even when framed as breaches of compensation agreements.  *See Nam*, 118 F.4th at 241-42, 247 (distinguishing cases involving ordinary employment contracts and underscoring that employment decisions may fall outside the commercial-activity exception depending on the nature of the *sovereign's* conduct).

Because the Mission's actions arise from quintessential sovereign functions—namely, the management and deployment of military personnel—the commercial activity exception does not apply. Consequently, the Court lacks jurisdiction to adjudicate this dispute and does not address the Mission's other arguments in favor of dismissal.

## IV.    Conclusion

For the reasons stated above, the Mission's motion to dismiss the Complaint for lack of subject matter jurisdiction is GRANTED.

The Clerk of Court is directed to terminate the motion at Docket Number 10, enter judgment of dismissal, and close this case.

SO ORDERED.

Dated: April 3, 2026
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

7